UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-00111-TBR

ANTONIO L. BRUNSON                                                    PLAINTIFF

v.

TERRY BIGBEE *et al.*                                                DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on two motions. Defendants Terry Bigbee, Officers John Doe 1-20, Hopkinsville Government Officials, and the City of Hopkinsville's (collectively "Defendants") Motion for Summary Judgment. [DN 27]; and Plaintiff Antonio L. Brunson's *pro se* Cross-Motion for Summary Judgment, [DN 30], to which Defendants responded, [DN 31]. This matter is now ripe for adjudication. For the reasons stated herein, Defendants' Motion for Summary Judgment, [DN 27], is **GRANTED**, and Plaintiff's Motion for Summary Judgment, [DN 30], is **DENIED**. The Court will enter a separate Order and Judgment contemporaneous to this Memorandum Opinion.

## BACKGROUND

Plaintiff Antonio Brunson is the owner of property situated at 2003 Oak Street, Hopkinsville, Kentucky. [DN 1 at 4]. On August 7, 2018, Detective Terry Bigbee and other uniformed officers with the Hopkinsville Police Department responded to anonymous complaints that Tony Brunson was in a green building on the corner of Oak Street and Breathitt Street and was manufacturing synthetic narcotics. [DN 27-3 at 108 Affidavit for Search Warrant]. Acting on this information—prior to obtaining a warrant—Detective Bigbee and the Hopkinsville Police Department began their investigation and approached Brunson's 2003 Oak Street address. [*Id*; DN 27-1 at 94]. Detective Bigbee approached the front door and his partner approached the back door.

[DN 15 at 47]. Mr. Brunson answered the door and Detective Bigbee informed Mr. Brunson of the anonymous complaint stating he was manufacturing synthetic marijuana at his residence. Detective Bigbee also advised Mr. Brunson that he smelled the odor of marijuana. [DN 27-1 at 94; DN 27-3 at 108]. Mr. Brunson denied entry into his residence, but because of the smell of marijuana coming from inside the residence, Mr. Brunson was detained outside of his home without handcuffs. [DN 27-1 at 94; DN 27-3 at 108]. Subsequently, while unrestrained, Mr. Brunson ran back inside the residence and locked the door. [DN 27-1 at 94; DN 27-3 at 108]. Detective Bigbee immediately sought a search warrant from Christian County District Judge Foster Cothoff. [DN 27-1 at 94; DN 27-3 at 108].

While Detective Bigbee was in the process of obtaining a search warrant, Mr. Brunson voluntarily exited his residence and was immediately handcuffed. [DN 27-1 at 94]. Within two hours, Detective Bigbee received the signed search warrant and executed a search of Mr. Brunson's residence, assisted by additional City of Hopkinsville Police Officers. [*Id.*] During the search, officers discovered marijuana, the synthetic narcotic "SPICE," and other drug paraphernalia in the residence. [DN 27-4 at 112 Uniform Citation issued to Brunson].

As a result of the search, Mr. Brunson was arrested and charged with multiple crimes in state court. [DN 27-1 at 95]. During Mr. Brunson's criminal case, he filed a motion to suppress the evidence seized during the execution of the search warrant on the basis that the search of the property was unconstitutional. [*Id*; *see* DN 27-5 Brunson's Memo in Support of Motion to Suppress, Case No: 18-CR-00512]. Christian County Circuit Judge John Adkins denied the motion after finding that there was probable cause to issue the search warrant for the Oak Street property. [DN 27-1 at 96–97; DN 27-6 at 149]. Subsequently, on February 13, 2019, Mr. Brunson pled guilty

to possession of a controlled substance, trafficking in marijuana, and trafficking in synthetic drugs. [DN 27-6].

On August 8, 2019, Mr. Brunson filed the current 42 U.S.C. § 1983 action against Detective Bigbee in his individual and official capacity, Officers John Doe 1–20 in their individual and official capacities, Hopkinsville Government Officials in their individual and official capacities, and the City of Hopkinsville for violations of his Fourth and Fourteenth Amendment rights. [DN 1]. Specifically, Mr. Brunson claims on August 7, 2018, Terry Bigbee and Officer John Doe came onto Plaintiff's property, "Defendant Bigbee went to the front door while Officer John Doe went to the back door . . . when I went outside, Detective Bigbee ran around the corner of my house [and] said he had an anonymous call stating I was selling marijuana." [*Id.* at 5]. Plaintiff states that "Detective Bigbee and Officer John Doe detained me while they called to get a warrant. I was detained outside of my house for 2 hours. Detective Bigbee never served a copy of a warrant to me." *Id.* Plaintiff further alleges that "Defendants Bigbee and Doe-1 detained Plaintiff without a warrant or probable cause . . . and unlawfully seized Plaintiff's property without a warrant or probable cause." [DN 1-1 at 13]. He also states that "Defendant Bigbee obtained the search warrant under false pretense." [DN 30 at 155]. Mr. Brunson further claims that Hopkinsville Government Officials and the City of Hopkinsville "violated Plaintiff's Fourth and Fourteenth Amendment rights . . . with the policy and procedure they have in place and the practices and customs of the city. . . and can be held accountable under *Monell v. New York*." [DN 1 at 15]. Plaintiff claims that "as a direct result of Defendants' unlawful actions," he suffers from nightmares of being held by the police, emotional problems and issues sleeping, anxiety, and he is being treated for Post Traumatic Stress Disorder (PTSD). [*Id.* at 5]. In his Complaint, Mr. Brunson asks the Court to:

(1) Declare that each of the Defendants, individually and collectively, violated the Plaintiff's Fourth Amendment rights.

(2) Permanently enjoin the unconstitutional practices of Defendants.
(3) Award Plaintiff $1,000,000.00 in compensatory damages for the deprivation of his Fourth Amendment rights.
(4) Award Plaintiff $20,000.00 in punitive damages against each Defendant.
(5) Award Plaintiff the interest to commence from the date of injury.

[DN 1 at 5].

On October 14, 2020, Defendants Terry Bigbee, Officers John Doe 1-20, Hopkinsville Government Officials, and the City of Hopkinsville filed a Motion for Summary Judgment. [DN 27]. Plaintiff Brunson then filed a Cross-Motion for Summary Judgment, [DN 30], to which Defendants responded, [DN 31].

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

"The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to overcome summary judgment. *Id.* The moving party must shoulder the

burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

Additionally, the Court acknowledges that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972). The duty to be less stringent with *pro se* complainants, however, "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted), nor to create a claim for a *pro se* plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

## DISCUSSION

### I. *Heck v. Humphrey*

First, Defendants argue Plaintiff's claims should be dismissed because "the Christian County Circuit Court held that the search warrant was valid in Brunson's criminal proceedings, and that holding should not be disturbed by this Court." [DN 27-1 at 96]. Defendants cite to *Stefanelli v. Minard* and *Younger v. Harris* wherein the U.S. Supreme Court held, "federal courts should refuse to intervene in state criminal proceedings to suppress the use of evidence even when claimed to have been secured by unlawful search and seizure." 342 U.S. 117, 120 (1951); 410 U.S. 37, 43 (1971) (holding there is a desire "to permit state courts to try cases free from interference by federal courts."). [*Id.* at 96]. Defendants did not expound upon this point beyond stating that because the state court held that probable cause existed, this Court should not hold otherwise for

purposes of this civil suit. [*Id.* at 96–97]. It appears Defendants intend to argue that this Court should abstain pursuant to *Younger*. However, the *Younger* abstention does not apply in this case because the state criminal proceedings have terminated, and the *Younger* abstention no longer applies upon termination of state criminal proceedings. *See Graves v. Mahoning County*, 534 F. App'x 399, 406 (6th Cir. 2013).[1]

Defendants also argue that Plaintiff's suit is barred by the *Heck* doctrine, stating that a § 1983 plaintiff is precluded from pursuing a claim that would imply the invalidity of his criminal conviction. [DN 27 at 97]. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Under *Heck*, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. *Id*; *see Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995). If it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *See Heck*, at 487. But if the district court determines that the plaintiff's § 1983 action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit. *Id.* Here, the Court finds that Plaintiff's § 1983 action is not barred by *Heck*.

In *Harper v. Jackson*, the Sixth Circuit explained that although *Heck* bars § 1983 Fourth Amendment claims where the contested search produced the only evidence supporting the conviction and no legal doctrine could save the evidence from exclusion, *Heck* did not bar the plaintiff's (Harper) suit because if he succeeded on his § 1983 claims, "his conviction would not

---

[1] The *Younger* abstention doctrine provides that a federal court should abstain from interfering in a state court action when (1) there is an ongoing state judicial proceeding, (2) the state proceeding implicates important state interests, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges. *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir.2008); *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 332 (6th Cir.2007).

necessarily be impugned because both the doctrine of inevitable discovery and the *Leon* good faith exception apply." 293 F. App'x 389, 392 (6th Cir. 2008) (citing *United States v. Leon*, 468 U.S. 897, 913 (1984) (adopting a "good faith" exception to the exclusionary rule where police seize evidence in reasonable reliance on a warrant issued by a neutral magistrate)).

Here, on February 13, 2019, Plaintiff pled guilty to possession of a controlled substance, trafficking in marijuana, and trafficking in synthetic drugs. [DN 27-6]. Plaintiff's conviction has not been invalidated, so the question is whether success on his § 1983 suit is would necessarily invalidate his criminal conviction. The Court finds that it would not. Plaintiff's description of the events outside his home, if accepted as true, do not necessarily contradict Plaintiff's guilty plea or conviction. *See Lucier v. City of Ecorse*, 601 F. App'x 372, 377 (6th Cir. 2015). Indeed, even if Plaintiff were to succeed on his claim that the warrant to search his home was without probable cause, that result would not necessarily impugn his conviction because even if the warrant were unlawfully obtained, the police acted in good faith reliance on the warrant as issued by a neutral magistrate, and thus the evidence could have been admitted to secure Plaintiff's conviction. *See Harper,* at 392 (citing *Leon*, 468 U.S. at 913).

## II. Immunity

Having determined that Plaintiff's suit is not barred by the *Heck* doctrine, the Court will now consider Defendants' arguments for immunity. For the following reasons, the Court finds that summary judgment for Defendants is appropriate, Detective Bigbee is entitled to qualified immunity on Plaintiff's federal claims, and Plaintiff's claims against the City of Hopkinsville are precluded by *Monell*.

### A. City of Hopkinsville

Plaintiff brings official capacity claims under § 1983 against HPD Detective Bigbee, HPD Officers John Doe 1–20, Hopkinsville Government Officials John Doe 1–20 Jane Doe 1–20, and the City of Hopkinsville. [DN 1 at 3]. An official capacity suit will be construed as a suit directly against the local governmental entity. Here, because Defendants are employees of the Hopkinsville Police Department, a division of the city government, or they are Hopkinsville government officials, Plaintiff's claims against them are actually brought against the City of Hopkinsville, and the Court will construe them as such. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Watson v. Gill*, 40 F. App'x. 88, 89 (6th Cir. 2002) ("Because the McCracken County Jail is a department of the county, the county is the appropriate party to address [plaintiff]'s suit."); *Morris v. Christian Cty. Sheriffs Dep't*, No. 5:12CV-P156-R, 2013 WL 787971, at *4 (W.D. Ky. Mar. 1, 2013) ("[T]he claims against the Sheriff's Department are actually against Christian County"). Defendants argue that Plaintiff failed to assert an unconstitutional custom, policy, or practice attributable to the City of Hopkinsville, therefore, Plaintiff's § 1983 claims must be dismissed. The Court agrees.

To assert a § 1983 claim against a defendant such as the City of Hopkinsville, the Court must determine: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the city is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Assuming Plaintiff could prove that any of the Defendants violated his constitutional rights, in order to recover against the City of Hopkinsville, Plaintiff would be required to prove that the actions or inactions of Defendants were done pursuant to a "policy or custom" attributable to the City of Hopkinsville and that this policy or custom was the "moving force" behind the deprivation of rights. *Miller v. Sanical County*, 606 F.3d 240, 254–55 (6th Cir.

2010) (citing *Monell v. New York Depart. Social Services*, 436 U.S. 658, 694 (1978)). A "custom" for purposes of *Monell* liability must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691–92. Essentially, a "custom" is a "legal institution" not memorialized by written law. *See Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1995).

The policy or custom must play a part in the violation of federal law—a causal connection is required. Considerably more proof than a single incident is necessary to establish both the requisite fault on the part of the municipality, and the casual connection between the policy and the constitutional deprivation. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). In this case, Plaintiff makes a generalized accusation that "Defendants have a practice of violating Constitutional rights of civilians with unlawful detainment and search and seizure of their propertys [sic]" and "can be held accountable under *Monell v. New York*." [DN 1 at 5; DN 1-1 at 15]. However, Plaintiff has pled only a single incident involving his arrest and has not put forth any evidence of an unconstitutional custom, policy, or practice to support his *Monell* claim. The record before the Court contains no evidence supporting Plaintiff's claim that it is the City of Hopkinsville's policy for its officers to violate citizen's Fourth Amendment rights. Therefore, the official capacity claims against the City of Hopkinsville will be dismissed and summary judgment GRANTED to Defendants on those claims.

### B. Detective Bigbee

Plaintiff has sued Hopkinsville Police Department (HPD) Detective Bigbee in both his individual and official capacities. However, "[a]s long as the government entity [for which the defendant works] receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S.

159, 166 (1985) (citations omitted). Therefore, the same analysis applies to the official capacity claims against Detective Bigbee as that of the claims against the City of Hopkinsville, and Defendant's motion for summary judgment will be granted on those claims.

As for the individual capacity claims, Plaintiff alleges Detective Bigbee violated his Fourth Amendment rights by detaining him without a warrant or probable cause, unlawfully searching his premises, and seizing his property without a warrant or probable cause. [DN 1 at 5; DN 1-1 at 13]. In response, Defendants argue that summary judgment is appropriate because the search warrant executed at Plaintiff's home was valid under the Fourth Amendment, Detective Bigbee and HPD Officers acted reasonably in detaining Plaintiff, and regardless, Detective Bigbee is entitled to qualified immunity. [DN 27-1 at 97–100].

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, the Court engages in a two-step inquiry, asking whether the plaintiff has presented facts demonstrating a violation of a constitutional right and "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* at 232 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Either step may be addressed first. *Id.* at 236; *see also Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). When evaluating the defense of qualified immunity on a motion for summary judgment, the court must adopt the plaintiff's version of the facts. *Campbell*, 700 F.3d at 786 (citing *Parsons*, 533 F.3d 492, 500). If, based upon these facts, no constitutional right was violated, there is no need for further inquiry. *Id.* Here, the Court concludes that Plaintiff

failed to show that Detective Bigbee violated his Fourth Amendment rights. As such, Detective Bigbee is entitled to qualified immunity on Plaintiff's claims brought under § 1983.

In Plaintiff's motion for summary judgment, he reiterates the factual allegations from his Compliant that Detective Bigbee and HPD Officer John Doe approached his residence with an unsubstantiated complaint of marijuana smoke emitting from the residence, and Defendants did not have a warrant. [DN 30 at 155]. Plaintiff states that "Bigbee approached and secured the front to the residence [and] [Officer John] Doe approached and secured the rear exit to the residence[,] seizing the proprty [sic] and taking complete control of it and anyone inside." *Id.* Next, Plaintiff alleges that Defendants "detained plaintiff and secured him in cuffs placing him inside a hot car for approximately 2 hours[ ]" while Detective Bigbee sought a search warrant for the residence. *Id.* Lastly, Plaintiff claims that Detective Bigbee obtained the search warrant under false pretense and falsified testimony during the suppression hearing in criminal court regarding the search and seizure of Plaintiff and his property on August 7, 2018. *Id.* Defendants admit that Detective Bigbee approached the front door and his partner approached the back door, and that Plaintiff was detained while they obtained a warrant after Defendants smelled marijuana. [DN 15 at 47]. However, Defendants deny that Plaintiff was detained for two hours. *Id.*

### i. Seizure of Plaintiff

In their motion, Defendants argue that the decision to detain Plaintiff while awaiting a search warrant was objectively reasonable because Detective Bigbee and other HPD officers noted the smell of marijuana coming from the residence, possessed credible information from an informant that Plaintiff was engaged in the illegal manufacture and sale of drugs, and that the person they were dealing with was in fact the Plaintiff, Antonio Brunson, based on previous encounters. [DN 27-1 at 99; DN 27-3 at 108 Affidavit for Search Warrant]. Defendants state that

initially, Plaintiff was detained outside the home without handcuffs. [*Id.* at 94; DN 27-3 at 108]. While detained outside, Plaintiff was read his *Miranda* rights and was advised that Detective Bigbee planned to obtain a search warrant Plaintiff's residence. [DN 31-2 at 175 Brunson's Memo in Support of Motion to Suppress, Case No. 18-CR-00512]. However, while unrestrained, Plaintiff managed to flee from that detention, run back inside the home, and proceeded to lock the doors. [DN 27-1 at 94; DN 27-3 at 108]. When officers approached the front door to enter the residence, Plaintiff voluntarily exited the residence and was immediately handcuffed. [DN 27-1 at 94]. Defendants state that Detective Bigbee instructed Plaintiff to wait outside the home until officers obtained the search warrant, which, according to Defendants, took no more than two hours. *Id.* Defendants contend that "law enforcement officers are permitted to detain citizens based on *less than* probable cause when criminal activity is reasonable [sic] suspected." [*Id.* at 98].

In support of their argument, Defendants rely on *Michigan v. Summers*, 452 U.S. 692 (1981), wherein the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." [DN 27-1 at 98].  The Supreme Court explained that "[o]f prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search respondent's house for contraband." *Summers*, at 701. However, Plaintiff's situation in the instant case is distinguishable from that presented in *Summers*. The defendant in *Summers* was detained while his home was being searched, but in this case, Plaintiff was detained while waiting for a search warrant to be issued.

With facts more akin to the instant case, in *Illinois v. McArthur*, 531 U.S. 326 (2001), the Court held that police acted reasonably in denying a man entry into his trailer for the two hours that it took them to obtain a search warrant. The Court reasoned the police had probable cause and

good reason to believe that the man would destroy the evidence if permitted entry to his trailer. *Id.* at 332. The Court further explained that police had reasonably balanced the need to search the property with the man's right of privacy and, finally, the warrantless seizure was limited to a reasonable period of time (two hours) while police retrieved a warrant. *Id.* Nowhere in *McArthur* did the police place the defendant into custody. *Id.* In another case, *United States v. Couch*, the court used the factors from *McArthur* and determined that the officer's acted reasonably in preventing Couch from re-entering his home while they waited for a search warrant. 2013 WL 6095512 (E.D. Ky. Nov. 20, 2013). In *Couch*, the court found the officers acted reasonably because they "had probable cause to believe that there was evidence inside the home. It was reasonable to believe that Couch would attempt to hide or destroy the evidence if he were let to enter the house alone. The police neither searched the home or arrested Couch before receiving the warrant. As in *McArthur*, they 'imposed a significantly less restrictive restraint' by preventing Couch from entering the trailer without a police escort. Finally, the restraint was only two hours long." *Id.* at *8. Couch was not handcuffed or placed under arrest while waiting for the warrant. *Id.* at *9. Finally, the court determined that "even if a reasonable person would have felt their movement was restrained," Couch was not in custody for purposes of *Miranda* when he was outside his home because the relevant environment did not present the same inherently coercive pressures at issue in *Miranda*. *Id.*

Here, Plaintiff claims that he was detained outside his house for two hours and Detective Bigbee told Plaintiff he was not free to leave. [DN 1 at 5]. In his motion for summary judgment, Plaintiff further claims that he was handcuffed and placed in a hot car for the two hours it took officers to obtain the search warrant. [DN 30 at 155]. It is undisputed that Plaintiff was placed in handcuffs for approximately two hours after he fled back into his home when officers initially

detained him without restraints. However, Plaintiff has not cited to any record evidence to support his allegation that he was placed in a hot car during this two-hour period, and Defendant's do not address this allegation. This bare assertion is insufficient to establish a genuine dispute of material fact as to whether Detective Bigbee's actions in detaining Plaintiff were objectively reasonable under the Fourth Amendment. To establish a genuine dispute of material fact, Plaintiff cannot merely point to unsupported self-serving allegations. Instead Plaintiff must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor. *See Harvey v. Campbell County*, 453 F. App'x 557, 565 (6th Cir. 2011). He has not done so, and the Court's duty to view facts in the light most favorable to the plaintiff does not require or permit the court to accept as true mere allegations that are not supported by factual evidence. *See Leary v. Livingston County,* 528 F.3d 438, 443–44 (6th Cir. 2008).

Here, reading *Summers* and *McArthur* together, the Court finds that no genuine issue of material fact exists as to whether Plaintiff's temporary pre-warrant detention was objectively reasonable. Not only did Plaintiff flee back into the residence after officers attempted to detain him without restraints upon smelling marijuana, but officers had probable cause to believe Plaintiff had evidence of illegal drugs inside the residence. Therefore, it is reasonable to believe that Plaintiff would hide or destroy the evidence if he were allowed to go back into the home. The two-hour detention was supported by probable cause, evidenced by the independent issuance of the search warrant. Plaintiff's pre-arrest seizure lasted "no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant." *McArthur*, 531 U.S. at 332. Though the search warrant was not obtained until after the seizure began, under *McArthur*, it is clear that a reasonably tailored warrantless seizure that secures law enforcement needs while protecting privacy interests does not violate the Fourth Amendment. *Id.* at 326. As stated, the seizure in this case did just that.

The Court recognizes that the instant case is distinguishable from *McArthur* and *Couch* because here, Plaintiff was placed in handcuffs while awaiting the warrant. However, the individuals in *McArthur* and *Couch* did not resist or attempt to flee like Plaintiff did in this case. As such, officers in *McArthur* and *Couch* did not elect to use handcuffs, while Detective Bigbee did as a result of Plaintiff's actions.

Accordingly, the Court finds there is no genuine issue of material fact as to whether Detective Bigbee's actions in detaining Plaintiff for two hours while a search warrant was being obtained for Plaintiff's residence were objectively reasonable. Because Detective Bigbee's actions do not constitute unreasonable seizure, he is entitled to qualified immunity on this claim. Therefore, Plaintiff's § 1983 Fourth Amendment claim for unlawful seizure against Detective Bigbee in his individual capacity will be dismissed and summary judgment GRANTED to Defendants on this claim.

### ii. Search Warrant

In Defendants' motion, they argue that the search warrant issued for Plaintiff's residence was valid under the Fourth Amendment as the facts outlined by Detective Bigbee in his affidavit were accurate and sufficient to establish probable cause that a search was necessary. [DN 27-1 at 97]. Defendants state that the affidavit included, among other things, that (1) Brunson was in the building and selling synthetic narcotics; (2) Brunson was manufacturing synthetic marijuana; (3) marijuana was likely at the property based on Detective Bigbee's observations of an odor of marijuana; and (4) drug paraphernalia was likely located within the home. [*Id*; DN 27-3]. Defendants further allege that "Plaintiff has not provided any corroborative evidence to establish that the search was invalid or unlawful, other than his self-serving, unverified testimony. Moreover, Plaintiff pled guilty to the state court criminal charges . . ." effectively admitting that

he was lawfully charged and that the evidence seized was sufficient to warrant his plea of guilty. [DN 27-1 at 97-98]. In response, Plaintiff argues that Detective Bigbee never served him with a copy of the warrant and that he obtained the search warrant under false pretense. [DN 1 at 5; DN 30 at 155].

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Regets v. City of Plymouth*, 598 F. App'x 380, 387 (6th Cir. 2014) (quoting *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245, 182 L. Ed. 2d 47 (2012)). The issuance of a warrant by a neutral magistrate does not end the inquiry; a plaintiff may maintain a lawsuit if no reasonably competent officer could have concluded that a warrant should be issued. *Id.* However, the "threshold for establishing this exception is a high one." *Id.*

The Fourth Amendment specifically requires that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The law does not require that every conceivable explanation other than a suspect's illegal conduct be ruled out in order to find probable cause, "[i]nstead, we need only consider whether there are facts that, given the factual and practical considerations of everyday life, could lead a reasonable person to believe that an illegal act has occurred or is about to occur." *United States v. Strickland,* 144 F.3d 412, 416 (6th Cir. 1998) (citations omitted). "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *United States v. Frazier,* 423 F.3d 526, 531 (6th Cir. 2005), *cert. denied,* 549 U.S. 976, 127 S.Ct. 446, 166 L.Ed.2d 309 (2006)).

The affidavit presented in support of the search warrant "must contain particularized facts demonstrating 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. McPhearson,* 469 F.3d 518 (6th Cir. 2006) (quoting *Frazier,* 423 F.3d at 531). The issuing judge must have a substantial basis for concluding that a search of the premises would uncover evidence of wrongdoing. *United States v. Savoca,* 739 F.2d 220, 224 (6th Cir. 1984). "This requires 'a nexus between the place to be searched and the evidence sought.'" *McPhearson,* 469 F.3d at 518 (quoting *United States v. Carpenter,* 360 F.3d 591, 594 (6th Cir. 2004)). Mere presence or arrest of a suspect at a residence is too insignificant a connection with that residence to establish the nexus necessary for a finding of probable cause. *Id.*; *United States v. Savoca,* 761 F.2d 292, 297 (6th Cir. 1985). The Supreme Court, in *Zurcher v. Stanford Daily et al.,* held that "the critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).

In this case, Detective Bigbee's affidavit contained particularized facts demonstrating a fair probability that evidence of a crime would be located at the Oak Street residence. Specifically, Detective Bigbee's affidavit included: (1) the address to be searched; (2) a description of the residence as a single story green cinder block home and the vehicle parked out front; (3) that the HPD was responding to reports that a Tony Brunson was located in a green building and was selling narcotics and was manufacturing synthetic narcotics; (4) that the affiant went to this address and a black male answered the door and was known by the affiant to be Antonio Brunson through previous contact; (5) Brunson stated the residence was his; (6) affiant detected the odor of marijuana as well as the odor of synthetic marijuana; (7) Brunson denied the presence of marijuana

in his residence; and (8) that Brunson was detained outside the residence, but managed to flee and re-enter the residence and lock himself inside. [DN 27-3]. In light of these facts, Detective Bigbee requested a search warrant of Plaintiff's property for the purpose of locating evidence pertaining to possession, sale, and/or manufacturing of narcotics or synthetic narcotics. *Id.* Subsequently, Detective Bigbee obtained a search warrant for Plaintiff's residence from Judge Cothoff. *Id.* Defendants did not conduct any search of Plaintiff's residence until they obtained this search warrant.

It is clear from the facts and evidence presented that Defendants followed standard protocol for obtaining a valid search warrant. Detective Bigbee provided an affidavit with sufficient particularized facts demonstrating a fair probability that evidence of a crime would be located on the premises, and Defendants waited to search until after they obtained the warrant. Moreover, obtaining a search warrant from a neutral magistrate, as Detective Bigbee did here, indicates preliminarily that he acted in an objectively reasonable manner. *See Regets*, 598 F. App'x at 387. Mr. Brunson argues that there was no probable cause to search his residence because Detective Bigbee and Officer John Doe approached his home based on "an unsubstantiated complaint of marijuana smoke emitting from the residence," and that Defendant Bigbee obtained the subsequent search warrant under false pretense. [DN 30 at 155]. However, the Court finds that Plaintiff has failed to substantiate these allegations with sufficient probative evidence to establish a genuine dispute of material fact as to whether the search warrant was unlawful.  Notably, not only did the state court deny Plaintiff's motion to suppress, holding that probable cause existed in the underlying criminal matter, but Plaintiff pled guilty to the criminal charges in state court.

Accordingly, the Court finds there is no genuine issue of material fact as to whether search warrant was valid or lawful under the Fourth Amendment. Because Plaintiff has not provided

sufficient evidence to show that Detective Bigbee violated his constitutional right to be free from an unreasonable search, Detective Bigbee's is entitled to qualified immunity on this claim. Therefore, Plaintiff's § 1983 Fourth Amendment claim for unlawful search against Detective Bigbee in his individual capacity will be dismissed and summary judgment GRANTED to Defendants on this claim.

### III. HPD Officers John Doe 1–20

Defendants argue that because Plaintiff failed to name the John Doe 1-20 Defendants and serve them within 90-days, as required by Fed. R. Civ. P. 4(m) and this Court's Order, [DN 9], Plaintiff's claims against these unknown defendants must be dismissed. [DN 27-1 at 103]. Plaintiff did not respond to this argument, and the Court agrees with Defendants. More than eight months ago, the Court ordered Plaintiff to identify and name the appropriate John Doe 1-20 Defendants or risk dismissal of his claims against the unknown defendants. [*See* DN 9]. Plaintiff failed to do so. Fed. R. Civ. P. 4(m) provides in pertinent part as follows:

> If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that the defendant or other that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Plaintiff filed his complaint on August 8, 2019. He is yet to identify John Does 1-20, and thus has yet to serve them, clearly in violation of the 90-day window provided by Rule 4(m). Accordingly, Plaintiff's claims against John Does 1-20 shall be dismissed without prejudice.

**CONCLUSION**

For the reasons stated, Defendants' Motion for Summary Judgment, [DN 27], is

**GRANTED**, and Plaintiff's Motion for Summary Judgment, [DN 30], is **DENIED**. The Court

will enter a separate Order and Judgment contemporaneous to this Memorandum Opinion.


*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

September 3, 2021


CC: Counsel of Record

**Antonio L. Brunson**
1117158 McCracken County Jail
400 Clarence Gains Street
Paducah, KY 42003
PRO SE